386 So.2d 237 (1980)
Mattie Lee BRYANT, Appellant,
v.
STATE of Florida, Appellee.
No. 56603.
Supreme Court of Florida.
July 17, 1980.
*238 Richard L. Jorandby, Public Defender and James K. Green of Brown & Green, West Palm Beach, for appellant.
Jim Smith, Atty. Gen. and Marc E. Kirk, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
This is a direct appeal from an order of the Fifteenth Judicial Circuit Court upholding the constitutionality of the state's jury selection statute.[1] We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
*239 In 1978, Mattie Bryant shot and killed Ossie Polk. Following her arrest, an indictment charged Bryant with first degree murder. Pursuant to plea negotiations, she pled nolo contendere to second degree murder, reserving the right to appeal the trial court's denial of her motion to dismiss the indictment and to quash the petit jury panel. Bryant received a fifteen-year sentence  five years to be served in prison with the balance on probation.
Two major points are raised in this appeal. The first is whether the trial court erred in denying appellant's motion to dismiss. Bryant charges that the denial was error because section 40.01, Florida Statutes (1977), is unconstitutional for three reasons: 1) no women or blacks have been selected as foremen of Palm Beach County grand juries since 1973; 2) blacks have been underrepresented on Palm Beach County grand juries; and 3) young adults (ages 18 to 29) have been similarly underrepresented. Appellant's second point is whether the trial court erred in imposing a mandatory minimum sentence where the indictment failed to cite section 775.087(2), Florida Statutes (1977),[2] and failed to specifically allege that the weapon used was a firearm.

Constitutionality of the Statute
It is well established that the states may not systematically and deliberately preclude service on juries merely because of a person's race. Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972). This does not mean, however, that a defendant has the right to demand that members of any certain race be included on the indicting grand jury. Id. The fact that juries do not statistically reflect the racial makeup of a community does not, by itself, show an invidious discrimination prohibited by the equal protection clause. Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Furthermore, the equal protection cases have never held that a law or other official act is unconstitutional solely because it has a racially disproportionate effect. Id.
Bryant bases her first claim on the selection of grand jurors solely from voter registration lists.[3]Castaneda v. Partida, *240 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), sets out the test for determining if a prima facie showing of an equal protection violation in grand jury selection has been made. The person challenging the selection procedure
must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs. The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied... . Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time.
430 U.S. at 494, 97 S.Ct. at 1280, 51 L.Ed.2d at 510. See Rose v. Mitchell, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979). If a prima facie case of discrimination is established, the burden of proof shifts to the state to show that permissible racially neutral selection criteria and procedures produced the seemingly impermissible result. Alexander v. Louisiana.
To show discriminatory selection under Castaneda, a defendant must establish (a) substantial underrepresentation of (b) an identifiable group that (c) is a recognizable, distinct class which (d) is singled out for different treatment by (e) comparing the group's proportions in both the population and on grand juries (f) over a significant period of time. After holding an evidentiary hearing, the trial court found appellant's proof insufficient. We hold, as did the trial court, that Bryant has failed in her burden of proving prima facie discrimination in the jury selection process.
There is no question that blacks and women constitute cognizable classes. Merely showing the existence of a distinct group, however, is not sufficient. Substantial underrepresentation over a significant period of time must also be proved.
We have gleaned the following facts from the statistics presented by appellant. The statistical period for the claims of underrepresentation of blacks and improper selection of foremen is only the five years from 1974 through 1978. During this period, the black population of Palm Beach County ranged from 13.4% (1977 and 1978) to 14.3% (1974) of that county's total population. The proportion of blacks on the voter registration list ranged from 8.0% (1976 and 1978) to 9.5% (1974). Of the grand juries empaneled between 1974 and 1978, 229 jurors were of known race; fifteen of the 229 were black. The overall proportion of blacks on these juries was 6.6%, ranging from a low of 3.0% (1978) to a high of 10.4% (1975). We find that appellant's statistics do not show substantial underrepresentation for a significant period of time either as a matter of law or as a matter of fact.[4]
Although this point is not reached due to our holding that appellant has failed to establish a prima facie equal protection violation, the Palm Beach County selection process is, at least on its face, racially neutral. The three jury commissioners select names totally at random from cards containing no notation of race. The use of the voter registration list is, therefore, color blind. While the legislature might choose to supply viable supplemental jury sources, the failure to do so does not equal purposeful exclusion.
Appellant's proof on the underrepresentation of young adults is also deficient. Numerous courts have heard claims that young adults constitute a cognizable class. See United States v. Potter, 552 F.2d 901 (9th Cir.1977); United States v. Diggs, 522 F.2d 1310 (D.C. Cir.1975); United States v. Kuhn, 441 F.2d 179 (5th Cir.1971). Only one, however, has ever held that *241 young adults comprise a recognizable, distinct group. United States v. Butera, 420 F.2d 564 (1st Cir.1970). This Court, following the majority of jurisdictions, holds that young adults do not constitute a cognizable class. Appellant, therefore, has failed to meet the threshold burden for showing a prima facie equal protection violation regarding the presence of young adults on Palm Beach County grand juries.[5]

Sufficiency of the Indictment
We find no merit to Bryant's claim that her indictment was insufficient due to a failure to mention the mandatory minimum sentence statute or to allege specifically that the weapon used was a firearm. Criminal defendants have a right to notice of the specific charges against them. Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948). Under Florida law, however, there is no requirement that a defendant be advised of any mandatory minimum sentence. Knowles v. State, 356 So.2d 885 (Fla.3d DCA 1978); Gonzalez v. State, 300 So.2d 691 (Fla.2d DCA 1974). See also Scott v. State, 369 So.2d 330 (Fla. 1979) (upholding the constitutionality of section 775.087(2) in the face of an allegation that the statute does not put a defendant on notice that conviction would subject such defendant to that section's provisions).
The indictment charged Bryant with killing Ossie Polk "by shooting him with a revolver." Adopting the reasoning of the First and Third District Courts of Appeal,[6] we hold that a revolver is a firearm within the meaning of sections 775.087(2) and 790.001(6).
For the foregoing reasons, we uphold both the trial court's denial of appellant's motion to dismiss indictment and quash petit jury panel and the sentence imposed below.
Affirmed.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] § 40.01, Fla. Stat. (1977). The portions of § 40.01 pertinent to this appeal read as follows:

40.01 Qualifications and disqualifications of jurors. 
(1) Grand and petit jurors shall be taken from the male and female persons at least 18 years of age, who are citizens of this state and who have resided in this state for 1 year and in their respective counties for 6 months, and who are fully qualified electors of their respective counties; however, expectant mothers and mothers with children under 15 years of age, upon their request, shall be exempted from grand and petit jury duty.
* * * * * *
(3) In the selection of jury lists only such persons as the selecting officers know, or have reason to believe, are law-abiding citizens of approved integrity, good character, sound judgment and intelligence, and who are not physically or mentally infirm, shall be selected for jury duty.
* * * * * *
[2] § 775.087(2) reads as follows:

(2) Any person who is convicted of:
(a) Any murder, sexual battery, robbery, burglary, arson, aggravated assault, aggravated battery, kidnapping, escape, breaking and entering with intent to commit a felony, or aircraft piracy, or any attempt to commit the aforementioned crimes; or
(b) Any battery upon a law enforcement officer or firefighter while the officer or firefighter is engaged in the lawful performance of his duties
and who had in his possession a "firearm," as defined in s. 790.001(6), or "destructive device," as defined in s. 790.001(4), shall be sentenced to a minimum term of imprisonment of 3 calendar years. Notwithstanding the provisions of s. 948.01, adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld, nor shall the defendant be eligible for parole or statutory gain-time under s. 944.27 or s. 944.29, prior to serving such minimum sentence.
[3] This Court has upheld Florida's selection procedure numerous times. Wilson v. State, 330 So.2d 457 (Fla. 1976); Wilson v. State, 306 So.2d 513 (Fla. 1975); Reed v. State, 292 So.2d 7 (Fla. 1974). The federal courts have also upheld the state's selecting grand juries from voter registration lists. Reed v. Wainwright, 587 F.2d 260 (5th Cir.1979); Marshall v. Holmes, 365 F. Supp. 613 (N.D.Fla. 1973). It should be noted that the United States Supreme Court has never found the selection of jurors solely from registration lists to be unconstitutional and that supplementation of such lists from other sources is not required by the Jury Selection Act of 1968. 28 U.S.C. § 1861 et seq. See United States v. Blair, 470 F.2d 331, 337 (5th Cir.1972).
[4] It should be noted that grand jury foremen are selected by the court from the jurors assembled after the jury has been empaneled. § 905.08, Fla. Stat. (1977). Although appellant has shown that no women or blacks were selected as jury foremen from 1974 to 1978, we refuse to ascribe to the trial courts a conscious, concerted plan not to select foremen from those groups.
[5] Appellant's claim on this issue also fails in another respect. The statistics on young adults cover only the year 1978. One year is statistically insignificant under Castaneda.
[6] State v. Nunez, 368 So.2d 422 (Fla.3d DCA 1979); Martin v. State, 367 So.2d 1119 (Fla.1st DCA 1979). See also Harris v. State, 370 So.2d 74 (Fla.2d DCA 1979) (a pistol is a firearm); Rogers v. State, 336 So.2d 1233 (Fla. 4th DCA 1976) (a pistol is a firearm); Davis v. State, 215 So.2d 626 (Fla.3d DCA 1968) (a revolver is a pistol and a pistol is a firearm).