810 So.2d 999 (2002)
Sherman HENDERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-743.
District Court of Appeal of Florida, Fourth District.
February 20, 2002.
Rehearing Denied April 2, 2002.
*1000 Carey Haughwout, Public Defender, and Anthony Calvello, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and James J. Carney, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
The main issue in this case is whether the state's amendment of an information to charge burglary instead of attempted burglary requires a reversal when the amendment came shortly before jury selection was to begin. The prosecutor gave the defense advance notice of the amendment so that the defense had an adequate opportunity to investigate and prepare a defense to the new charge. Therefore, we affirm.
On July 7, 2000, the state charged appellant, Sherman Henderson, with attempted burglary, possession of burglary tools, and escape. Henderson entered a plea of not guilty and demanded a jury trial.
At a Friday calendar call, both sides announced ready for trial. Later that day, the prosecutor advised the defense attorney of his intent to file an amended information, substituting the charge of burglary of a dwelling for attempted burglary of a dwelling.
The following Monday morning, prior to jury selection, the state moved to amend the information to charge burglary of a dwelling, under section 810.02(3), Florida Statutes (2000). The state contended that Henderson committed a completed burglary since he was inside the carport of the house when the victim heard him scraping at her bedroom window. Under the state's theory, if the carport was part of the "curtilage" of the victim's house, then it was a "dwelling" within the meaning of section 810.011(2), Florida Statutes (2000).
When the defense attorney objected, the court asked him to specify how the defense had been prejudiced by the late amendment. The attorney responded:
The thing that I could have done is ... I could have asked the police officers as to where they saw, and I did, as to where they saw Mr. Henderson, whether Mr. Henderson went to any carport, where *1001 was the carport, how far was it located from the house.... I could have had my investigators take pictures of this alleged carport and the house, the distance from the carport to the house, fingerprints found anywhere in this carport that belongs [sic] to Mr. Henderson. There are a great number of things that I could have done.
The prosecutor pointed out that the defense had long known of Henderson's location under the carport when the police first arrived at the scene. The arresting officer's probable cause affidavit stated that he "observed Henderson at the north window, which was a double hung window, under the carport. He was prying at the lock area of the window with a small tool."
The trial court overruled Henderson's objection to the amended information and denied his motion for a continuance. The judge observed that any issue regarding the carport could be adequately addressed by photographs or "in the form of diagrams which we use on a regular basis," using an easel pad in the courtroom. The court also afforded the defense the opportunity to interview any witnesses before they testified.
In Toussaint v. State, 755 So.2d 170, 171 (Fla. 4th DCA 2000), we wrote that
[i]t is well settled that "the state may substantively amend an information during trial, even over the objection of the defendant, unless there is a showing of prejudice to the substantial rights of the defendant." State v. Anderson, 537 So.2d 1373, 1375 (Fla.1989).
Since the amendment here occurred prior to trial, the focus is on the court's denial of the motion for continuance.
Because the granting or denial of a continuance is within the trial court's discretion, "[d]enial of a motion for continuance `should not be reversed by an appellate court unless there has been a palpable abuse of this judicial discretion' that `clearly and affirmatively' appears in the record." Weible v. State, 761 So.2d 469, 472 (Fla. 4th DCA 2000) (quoting Magill v. State, 386 So.2d 1188, 1189 (Fla.1980)). The "common thread" running through those cases finding an abuse of discretion in the denial of a continuance "is that defense counsel must be afforded an adequate opportunity to investigate and prepare any applicable defense." Weible, 761 So.2d at 472 (quoting Smith v. State, 525 So.2d 477, 479 (Fla. 1st DCA 1988)).
The effect of the state's amendment was to raise the legal issue of whether the carport was part of the "curtilage" of the dwelling within the meaning of the burglary statute. The defense was aware of the proposed amendment the Friday before the trial was to begin. This was adequate time for the defense to confront the amended charge.
Cursory research would have uncovered State v. Burston, 693 So.2d 600, 601 (Fla. 2d DCA 1997), where the second district held that a carport contiguous to a dwelling consisting of "a cement slab, a roof that was flush with the roof of the dwelling, and four aluminum poles supporting the roof" was part of the curtilage. Burston cited State v. Hamilton, 660 So.2d 1038 (Fla.1995), the supreme court's most extensive pronouncement on the term "curtilage" as used in the burglary statute. At the time of trial, this court had cited Burston and Hamilton in Small v. State, 710 So.2d 591, 594 (Fla. 4th DCA 1998), where we indicated that "a carport may be a burglarizable portion of a dwelling."
With Burston and Hamilton in hand, and the ability to reinterview witnesses before they took the stand, prepare charts and drawings, and take photographs, the defense would have been well able to develop a legal argument regarding the carport as curtilage. The crucial facts on this *1002 issue were not in dispute. The carport was what it was. How the law applied to the facts was the only issue that might have been open to argument.
The importance of characterizing the defendant's conduct at the victim's window did not change after the amendment. The thirteen year old victim was awakened by a scraping sound at her bedroom window at 2:30 a.m. She called the police. Within five minutes the police arrived and saw Henderson in the carport with a shiny object in his hand prying at the bedroom window. For the original charge of attempted burglary, the defendant's conduct at the window demonstrated his attempt to get into the house. For the burglary charge, the conduct showed the defendant's intent to commit a crime within the dwelling. Before and after the amendment, the defense had a strong incentive to develop the facts surrounding Henderson's conduct at the bedroom window underneath the carport.
We distinguish Washington v. State, 378 So.2d 852 (Fla. 4th DCA 1979), and Hahn v. State, 626 So.2d 1056 (Fla. 4th DCA 1993). Like the case at hand, both cases involved amended informations filed the morning of trial. However, in both Hahn and Washington, the new crime charged contained a different state of mind component than the crimes originally charged. In each case, the change in the elements of the crimes charged significantly altered the nature of the defense.
In Washington, the defendant was originally charged with burglary and grand theft; the amended information charged the defendant with dealing in stolen property. 378 So.2d at 853. We noted that the elements of dealing in stolen property were "obviously different from the elements which must be proved in a burglary or grand theft case." Id. In a burglary or grand theft case, the state need not show that the defendant trafficked in, or endeavored to traffic, in "property one knows or should know to be stolen." Id.
In Hahn, the state originally charged the defendant with aggravated battery, but amended the information on the morning of trial charging him with attempted second degree murder. 626 So.2d at 1058. We found that the late amendment prejudiced the defendant because "aggravated battery is a specific intent crime, whereas second degree murder requires only a general intent." Id.
A change in the state of mind required to prove a crime necessarily changes the presentation of a case. Usually, state of mind is not proved directly, but by inference from the bits of evidence admitted at trial. A change in this element of a crime on the morning of trial is unfair because it requires the defense to change its approach to the case without time to evaluate the evidence in light of the new requirements of proof.
In this case, there was no drastic change in the elements of proof on the morning of trial. Under either information, the state was required to prove that, at 2:30 a.m., the defendant was attempting to enter the house to commit a crime. The change in the charge involved the application to the law to stable facts. Further discovery would not have moved the carport to a different location some distance from the house. We find no abuse of discretion in the failure to grant a continuance under these circumstances.
AFFIRMED.
WARNER and FARMER, JJ., concur.